**Affirmed in part, Reversed in part, Rendered in part, and Memorandum Opinion filed August 27, 2019.**



In the

# Fourteenth Court of Appeals

---

## NO. 14-18-00429-CV

---

### YEW YUEN CHOWAND JEFFERY CHOW, Appellants

**v.**

### JOSE M. RODRIGUEZ SAN PEDRO, Appellee

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2016-76781**

---

## MEMORANDUM OPINION

This is an interlocutory appeal from orders denying special appearances made by nonresident individual defendants Yew Yuen Chow and Jeffery Chow in a suit brought by appellee Jose M. Rodriguez San Pedro. *See* Tex. R. Civ. P. 120a; Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Supp.). San Pedro's suit primarily concerns an alleged earn-out payment arrangement and related discussions. Specifically, he brings claims against Y.Y. Chow and J. Chow for fraud, breach of

fiduciary duty, negligent misrepresentation, and promissory estoppel.

San Pedro alleged that the trial court has general and specific jurisdiction over Y.Y. Chow and specific jurisdiction over J. Chow. Y.Y. Chow contends Texas is not his domicile. Y.Y. Chow and J. Chow contend they are Singapore residents who only acted in Texas in their corporate capacities for defendant Keppel AmFELS L.L.C. (AmFELS) or its predecessor.[1]

We conclude that Y.Y. Chow's Texas contacts are insufficient to confer general jurisdiction over him. We conclude that the allegations regarding San Pedro's promissory-estoppel claims are insufficient to confer specific jurisdiction over Y.Y. Chow and J. Chow. We conclude that Y.Y. Chow's Texas contacts are insufficient to confer specific jurisdiction over him with regard to San Pedro's fraud claim. However, we conclude that Y.Y. Chow's and J. Chow's Texas contacts are sufficient to confer specific jurisdiction over both of them with regard to San Pedro's breach-of-fiduciary-duty and negligent-misrepresentation claims and that J. Chow's Texas contacts are sufficient to confer specific jurisdiction over him with regard to San Pedro's fraud claim. We also conclude that exercising such jurisdiction over Y.Y. Chow and J. Chow comports with fair play and substantial justice.

We reverse in part the trial court's order concerning Y.Y. Chow and render judgment granting Y.Y. Chow's special appearance with regard to and dismissing San Pedro's claims against Y.Y. Chow for promissory estoppel and fraud. We reverse in part the trial court's order concerning J. Chow and render judgment granting J. Chow's special appearance with regard to and dismissing San Pedro's claim against J. Chow for promissory estoppel. We otherwise affirm the trial court's orders as challenged.

---

[1] AmFELS did not file a special appearance and is not a party to this appeal.

# I. BACKGROUND

Because the parties involved in this appeal have a lengthy business-related history, we endeavor to limit our background discussion. San Pedro, a Florida resident, has experience in power-plant development, financing, and construction in the Caribbean Basin and Latin America. San Pedro founded the Nicaraguan entity Corporacion Electrica Nicaragüense, S.A. (CENSA). In 1995, Empresa Nicaragüense de Electricidad (ENEL), the Nicaraguan state-owned electric generation, transmission, and distribution company, entered into a Power Purchase Agreement (PPA) with CENSA.

AmFELS, a Texas entity with a principal place of business in Brownsville, Texas, and an office in Houston, was engaged in the construction and repair of mobile drilling rigs and platforms. In the mid-1990s, AmFELS sought to enter the Latin American power-generation business. In 1995, Y.Y. Chow, then president of AmFELS, reached out to San Pedro. They met in Houston and discussed the possibility of requesting an extension to the recently-expired PPA for a possible co-venture with AmFELS. After ENEL granted CENSA a short extension, however, the PPA terminated.

Also, in 1995, J. Chow, then providing legal services for AmFELS, approached San Pedro regarding spearheading AmFELS's fledgling Power Development Division and preparing AmFELS's bid package for a new PPA with ENEL. San Pedro then met with AmFELS executives, including Y.Y. Chow and J. Chow, in Brownsville. San Pedro began working with AmFELS.

In March 1996, ENEL entered into a new PPA with AmFELS. In 1996, San Pedro met with Y.Y. Chow and J. Chow in Brownsville to discuss the sale of CENSA to AmFELS and San Pedro's request for an earn-out agreement. San Pedro sold CENSA to AmFELS for $75,000.

3

On January 22, 1997, AmFELS and San Pedro entered into a letter agreement in Brownsville whereby AmFELS agreed to pay San Padro $80,000 per year, paid quarterly, "as long as the [1996 PPA] is in full force and effect and ENEL has not defaulted thereunder." Y.Y. Chow and J. Chow were both present. Y.Y. Chow signed this earn-out agreement as president of AmFELS; J. Chow prepared and initialed the AmFELS earn-out agreement.

On January 24, 1997, the 1996 PPA held by AmFELS was assigned to CENSA "completely free of any charge or load" for $20,000. The assignment was accomplished through a notarized instrument executed in Houston.

On January 25, 1997, the newly elected CENSA board of directors, including Y.Y. Chow and J. Chow, appointed San Pedro as general manager of CENSA.

AmFELS did not pay San Pedro any payments under the AmFELS earn-out agreement. In March 1998, J. Chow called San Pedro from Texas regarding his signing an earn-out agreement with CENSA. J. Chow sent San Pedro a fax from Texas containing specific language J. Chow wanted to be included in the CENSA earn-out agreement. After San Pedro read the language and translated it to Spanish, San Pedro called J. Chow in Texas to discuss a clause prohibiting an assignment or sale of the earn-out payments. J. Chow explained that the language would protect San Pedro's wife and son "in case something happened" to him. San Pedro further asked J. Chow "if everything was taken care of and if [the CENSA earn-out agreement] was in proper form." J. Chow assured San Pedro "it was," and based on this statement, San Pedro signed the CENSA earn-out agreement on March 18, 1998.

The CENSA earn-out agreement stated that, in the 1997 assignment, CENSA had "acquired" from AmFELS "the obligation to pay annually" San Pedro $80,000 in quarterly installments, as long as the 1996 PPA was "in force." CENSA began making payments to San Pedro under the CENSA earn-out agreement.

4

In 2004, Otto Escorcia, CENSA's general manager, and José Francisco Mojica, CENSA's financial manager, requested an addendum to the CENSA earn-out agreement to reflect that San Pedro's payments were "net" for tax purposes. The addendum was executed in December 2004. AmFELS sold CENSA to a Panamanian company in 2009.

In 2009, CENSA attempted to renegotiate the CENSA earn-out agreement and 2004 addendum with San Pedro to substantially lower his payments by 80 percent. San Pedro did not agree to any reduction. In late 2013, CENSA stopped paying San Pedro's earn-out payments.

In 2014, CENSA sued San Pedro in Nicaragua over the "veracity" of the CENSA earn-out agreement and 2004 addendum. In 2016, the Nicaraguan court ruled in CENSA's favor because the payment obligation "was never assigned" from AmFELS and was a "nullity." San Pedro was ordered to return payments he received from 1998 to 2013 totaling $969,292.00.

San Pedro brought claims against AmFELS, Y.Y. Chow, and J. Chow in Harris County district court. Specifically, San Pedro brought claims against all the defendants for fraud, breach of fiduciary duty, promissory estoppel, and negligent misrepresentation.[2]

Y.Y. Chow and J. Chow each filed a verified special appearance with attached declaration. San Pedro filed a response, attaching his counter-affidavit.[3]

---

[2] San Pedro brought a claim for breach of contract only against AmFELS. San Pedro's live petition at the time of the special appearances was his third amended petition.

[3] San Pedro also attached: his third amended petition; the AmFELS earn-out agreement; a translation of the CENSA earn-out agreement; a translation of the 2004 addendum; San Pedro's affidavit; documents related to the 2009 sale of CENSA; the 2016 Nicaraguan opinion and final judgment against San Pedro; a 2017 partition agreement between Y.Y. Chow and his wife; Y.Y. Chow's declaration; excerpts from Y.Y. Chow's deposition; Y.Y. Chow's responses to San Pedro's jurisdictional interrogatories; HCAD account information from tax years 2012, 2016,

Y.Y. Chow filed a reply, attaching excerpts from his deposition and from San Pedro's deposition. J. Chow also filed a reply, attaching excerpts from his deposition and from San Pedro's deposition.[4] The trial court held a hearing; no evidence was admitted at the hearing. On April 30, 2018, the trial court signed orders denying the special appearances. Y.Y. Chow and J. Chow timely appealed.

## II.    ANALYSIS

San Pedro alleged that the trial court has general jurisdiction over Y.Y. Chow as a resident of and owner of real property in Texas at the time this suit was filed. San Pedro alleged that the trial court has specific jurisdiction over Y.Y. Chow and J. Chow because they purposefully directed their activities towards and in Texas and availed themselves of the privilege of conducting business in Texas and benefits under Texas law; their conduct and contacts with and within Texas were neither fortuitous or isolated, but direct and intentional, giving rise to the claims asserted against them; they committed torts in whole or in part in Texas by making or directing others to make multiple fraudulent and/or negligent false representations or statements on or about March 18, 1998, and other times, relied upon by San Pedro to his detriment; and their conduct and contacts in Texas with San Pedro created fiduciary relationships with San Pedro, both formal and informal, which they

---

2017, and 2018; a confidential memo dated September 26, 1995 to Y.Y. Chow from San Pedro with attachments; a letter dated September 7, 1995 to Y.Y. Chow from San Pedro; a confidential memo dated November 19, 1995 to Y.Y. Chow from San Pedro; a memo to San Pedro from J. Chow with attachment; a translation of the January 25, 1997 meeting minutes of the CENSA board of directors; AmFELS's second amended responses to San Pedro's requests for disclosure; excerpts from Keppel Corporation's 2014, 2015, and 2016 annual reports; J. Chow's declaration; transcript excerpts from a sealed federal criminal proceeding in the Eastern District of New York; excerpts from J. Chow's deposition; and docket information for the New York federal criminal case.

[4] San Pedro filed objections and a motion to strike Y.Y. Chow's and J. Chow's replies, to which each of Y.Y. Chow and J. Chow responded. The record does not contain any ruling on San Pedro's objections and motion to strike.

breached by their conduct in Texas. The trial court denied Y.Y. Chow's and J. Chow's special appearances without specifying which type of jurisdiction it found.

In one overriding issue, Y.Y. Chow and J. Chow argue that the trial court erred by denying their special appearances. Subissue (1) concerns whether there is general jurisdiction over Y.Y. Chow. Subissue (2) concerns whether San Pedro's allegations and the evidence are sufficient to support specific jurisdiction over Y.Y. Chow and J. Chow. We sustain subissue (1) and sustain in part subissue (2).

## 1. Applicable law and standard of review

Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo, but the trial court frequently must resolve questions of fact in order to decide the issue. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, a trial court does not issue findings of fact and conclusions of law with its ruling on a special appearance, all findings necessary to support the ruling and supported by the evidence are implied, although the sufficiency of the record evidence to support those findings may be challenged on appeal. *Id.* at 795.

The broad "doing business" language in the Texas long-arm statute allows the exercise of personal jurisdiction to "reach[] as far as the federal constitutional requirements of due process will permit." *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977) (interpreting former Revised Statutes art. 2031b, Act of Mar. 18, 1959, 56th Leg., R.S., ch. 43, § 4, 1959 Tex. Gen. Laws 85, 85–86 (amended 1979) (current version at Tex. Civ. Prac. & Rem. Code § 17.042)); *see* Tex. Civ. Prac. & Rem. Code Ann. § 17.042.[5] Due process is satisfied when the

---

[5] Section 17.042, "Acts Constituting Business in This State," provides:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A nonresident defendant's minimum contacts can create either general or specific jurisdiction. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three components to the "purposeful availment" inquiry. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016). First, the relevant contacts are those of the defendant, not the unilateral activity of another party or a third person. *Id.* Second, the contacts must be purposeful rather than random, fortuitous, isolated, or attenuated. *Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.*

General jurisdiction is party focused. A trial court has general jurisdiction over a nonresident defendant when the defendant's contacts with the forum state are so continuous and systematic that the defendant is essentially at home in the state. *TV Azteca*, 490 S.W.3d at 37. When a nonresident defendant is subject to general jurisdiction, the trial court may exercise jurisdiction over the defendant even if the plaintiff's cause of action does not arise from or relate to the defendant's contacts with the forum. *Id.* This test requires substantial activities within the forum and is

---

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042.

more demanding than the test for specific jurisdiction. *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *see Domicile*, Black's Law Dictionary (11th ed. 2019) ("The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere."). We determine an individual's domicile for purposes of general jurisdiction as of the time suit is filed. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48 (1952).

Specific jurisdiction is transaction focused. A trial court has specific jurisdiction over a nonresident defendant when (1) the defendant's contacts with the forum state are purposeful and (2) the cause of action arises from or relates to those contacts. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). When a nonresident defendant is subject to specific jurisdiction, the trial court may exercise jurisdiction over the defendant even if the defendant's forum contacts are isolated or sporadic. *TV Azteca*, 490 S.W.3d at 37. In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. *Kelly*, 301 S.W.3d at 658. There must be a substantial connection between the defendant's contacts and the operative facts of the litigation. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 156 (Tex. 2013). Generally, a specific-jurisdiction analysis should be performed on a claim-by-claim basis. *Id.* at 150. When separate claims are based on the same forum contacts, however, a separate analysis of each claim is not required. *Id.* at 150–51.

In a special appearance, the plaintiff and the defendant bear shifting burdens of proof. *Kelly*, 301 S.W.3d at 658. The plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-

arm statute. *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 17.042. If the plaintiff meets its initial burden, the burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* At the special-appearance stage, we must take the plaintiff's allegations as true. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007). A defendant can negate jurisdiction on either a factual or a legal basis. *Kelly*, 301 S.W.3d at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* Or the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Id.* If the defendant meets its burden of negating all alleged bases of personal jurisdiction, then the plaintiff must respond with evidence "establishing the requisite link with Texas." *See id.* at 660.

Once the court concludes that the defendant has sufficient minimum contacts with the state to establish personal jurisdiction, the defendant bears the burden of establishing that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

To determine whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice, the court considers: (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interests in obtaining convenient and effective relief, (4) the international justice system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the nations in furthering fundamental substantive social policies. *Moncrief Oil*, 414 S.W.3d at 155. Only in rare cases will the exercise of

10

personal jurisdiction not comport with fair play and substantial justice when a nonresident defendant has purposefully availed itself of the privilege of conducting business within a forum. *Id.* at 154–55; *Guardian Royal*, 815 S.W.2d at 231.

## 2. No general jurisdiction over Y.Y. Chow

We first consider whether the trial court erred to the extent it concluded that it could exercise general jurisdiction over Y.Y. Chow. San Pedro alleged that Y.Y. Chow was a Texas resident at the time suit was filed and that he "owned real property in Texas located at [address] that he claimed as his homestead."

In his declaration, Y.Y. Chow attested that he is and has always only been a citizen of Singapore and has only ever maintained a Singapore passport. For the five years prior to suit, Y.Y. Chow spent the majority of his time living and working in Singapore. Y.Y. Chow maintained and still maintains "a permanent residence at [address]" in Singapore. Y.Y. Chow stated: "It is my intention to remain a resident and citizen of Singapore indefinitely." For the last five years, Y.Y. Chow only traveled to Texas for about two to three weeks each year, "specifically limited to [his] work for" Keppel Offshore and Marine Limited. As president of AmFELS, from January 1993 to May 2003, Y.Y. Chow resided in Brownsville, Texas, for work but "always intended to return to Singapore." As president of Keppel Offshore & Marine U.S.A., Inc., Y.Y. Chow resided in Houston from 2003 until June 2011, when he returned to his permanent residence in Singapore. Y.Y. Chow acknowledged owning until 2017 a house with furnishings in Houston and paying for utilities and property taxes from a joint bank account owned with his wife, but it "is not [his] primary or permanent residence." Y.Y. Chow stated that he does not own any vehicles registered in Texas and has never had a Texas driver's license. In his individual capacity, Y.Y. Chow has never had anyone serve as his agent or representative in Texas and has never initiated any legal proceeding in Texas.

As he argued in his special appearance below, Y.Y. Chow contends that he is not "at home" in Texas, but rather is domiciled in Singapore based on the "paradigm" test set out by the United States Supreme Court in *Daimler AG v. Bauman. See* 571 U.S. at 137. According to Y.Y. Chow, mere property ownership and his inadvertent failure to cancel a tax designation created thirteen years before suit do not present an "exceptional" enough case to subject him to dispute-blind general jurisdiction. *See id.* at 139 n.19.

In his response below, as he does on appeal, San Pedro argued that Y.Y. Chow was properly subject to the trial court's general jurisdiction because he previously lived in Texas for eighteen years and his Houston property kept its homestead status after Y.Y. Chow "moved from" Texas.

We disagree with San Pedro that Y.Y. Chow is "tied up" and "almost entangled in a web" with Texas for purposes of general jurisdiction. In our determination, we must keep in mind that because general jurisdiction involves a court's ability to exercise jurisdiction over a nonresident based on any claim, including claims unrelated to the defendant's contacts, it requires a much more demanding minimum-contacts analysis. *See TV Azteca*, 490 S.W.3d at 37. Although San Pedro places great emphasis on the fact that at the time of suit Y.Y. Chow still owned a house in Houston and the house was still designated exempt as a residential homestead for purposes of property taxes,[6] we must consider all the record evidence to determine whether Texas was Y.Y. Chow's "domicile" at the time of suit. *See Lawrence v. Page*, No. 01-16-00133-CV, 2016 WL 5947490, at *4 (Tex. App.— Houston [1st Dist.] Oct. 13, 2016, no pet.) (mem. op.) ("An individual may have

---

[6] While the special appearance was pending, Y.Y. Chow executed a partition agreement with his wife, which conveyed all of his community-property interest in the Houston house to his wife as her separate property. HCAD's records for tax year 2018 show Y.Y. Chow's wife as the owner of the house and no property exemptions.

multiple residences, but only one domicile.").

Other evidence demonstrates that for the past five years, Y.Y. Chow's primary residence has been and is in Singapore; his only travel to Texas has been for limited durations and only for work; he "always intended to return to Singapore"; and he currently intends indefinitely to remain a resident of Singapore and live at his permanent residence there. *See N. Frac Proppants, II, LLC v. 2011 NF Holdings, LLC*, No. 05-16-00319-CV, 2017 WL 3275896, at \*25 (Tex. App.—Dallas July 27, 2017, no pet.) (mem. op.) (considering individual defendant's "Texas contacts extending back a reasonable number of years and continuing until when suit was filed" and discounting "stale" contacts).

That Y.Y. Chow may have previously been considered domiciled in Texas does not control. *See id.* at \*25–26; *cf. Ascentium Capital LLC v. Hi-Tech the Sch. of Cosmetology Corp.*, 558 S.W.3d 824, 831 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("That Texas was once the company's only place of business is entitled to little weight . . . ."). And that Y.Y. Chow at the time of suit had failed to remove an appraisal-district designation from a house in which he no longer primarily presided (and had not for over five years) does not otherwise render him domiciled or "essentially at home" in Texas such that he should be subject to suit here for any cause of action arising anywhere in the world. *See Daimler*, 571 U.S. at 137–39; *N. Frac Proppants*, 2017 WL 3275896, at \*26 ("Tesson's remaining contacts do not suffice because they do not show that he is comparable to a Texas domiciliary."); *Ascentium Capital*, 558 S.W.3d at 831 (discounting "mere filing of a form"). The cases cited by San Pedro do not persuade us that Texas was Y.Y. Chow's "domicile" at the time suit was filed.[7]

---

[7] Such cases either involved only specific jurisdiction or did not address any underlying jurisdictional finding by the trial court. *See Milliken v. Meyer*, 311 U.S. 457, 461–64 (1940);

Accordingly, on this record, to the extent the trial court concluded it could exercise general jurisdiction over Y.Y. Chow, it erred. We sustain subissue (1).

### 3. Specific jurisdiction

Next, we consider whether the trial court properly could exercise specific jurisdiction over Y.Y. Chow and J. Chow. San Pedro alleged the following claims against both Y.Y. Chow and J. Chow: fraud, breach of fiduciary duty, promissory estoppel, and negligent misrepresentation.

#### 1. Y.Y. Chow's and J. Chow's contacts on AmFELS's behalf

Y.Y. Chow and J. Chow generally do not dispute that at various times they had contacts with Texas. However, in their special appearances, they pointed out that all their contacts with Texas are entirely dependent on and related to their employment with AmFELS. In their replies,[8] with regard to San Pedro's promissory-estoppel claims, they noted that San Pedro did not allege that Y.Y. Chow and J. Chow made any promise to San Pedro to pay his earn-out agreement in any individual capacity, as opposed to in an agent or employee capacity for AmFELS. Likewise, in their brief, they argue that personal jurisdiction requires a basis for imputing contacts in a representative or corporate capacity to agents or employees individually and specifically invoke the fiduciary-shield doctrine.

*Tort claims*. "Under the fiduciary shield doctrine, a nonresident officer or employee may not be subject to personal jurisdiction when all of his contacts with the forum state were made on behalf of his corporation or employer." *Yujie Ren v. ANU Res., LLC*, 502 S.W.3d 840, 849 (Tex. App.—Houston [14th Dist.] 2016, no

---

*Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009); *Tabacinic v. Frazier*, 372 S.W.3d 658, 664 (Tex. App.—Dallas 2012, no pet.).

[8] At the time Y.Y. Chow and J. Chow filed their special appearances, San Pedro's petition only alleged fraud claims against them. They addressed his later-added claims in their replies.

pet.). "[M]ost Texas courts applying the fiduciary shield doctrine have limited its application to attempts to exercise general—not specific—jurisdiction over a nonresident defendant." *Id.* at 849 n.6. In any event, "[a] corporate employee is not shielded from the exercise of *specific* jurisdiction as to torts for which the . . . employee may be held individually liable," even if all his contacts were performed in a corporate capacity. *Fjell Tech. Group v. Unitech Int'l, Inc.*, No. 14-14-00255-CV, 2015 WL 457805, at *5 (Tex. App.—Houston [14th Dist.] Feb. 3, 2015, pet. denied) (mem. op.) (internal quotation marks omitted). Here, San Pedro alleged the torts of fraud, breach of fiduciary duty, and negligent misrepresentation against Y.Y. Chow and J. Chow individually for which they could be held liable even if they were acting for AmFELS. Therefore, we reject the argument that Y.Y. Chow and J. Chow are entitled to protection from specific jurisdiction on San Pedro's tort claims simply because their alleged acts were allegedly done in a corporate capacity. *See id.*

*Promissory-estoppel claims.* San Pedro also brought promissory-estoppel claims[9] against Y.Y. Chow and J. Chow. In relevant part, San Pedro alleged that Y.Y. Chow and J. Chow while in Texas promised him that AmFELS would pay him under an earn-out agreement for San Pedro's efforts in securing the 1996 PPA and for the construction of the Nicaraguan power plant and sale of energy produced. San Pedro further alleged that he relied on their promises and performed under the agreement. However, San Pedro did not allege that Y.Y. Chow or J. Chow individually were parties to the AmFELS earn-out agreement who could be liable for a breach of contract. *See Mort Keshin & Co., Inc. v. Houston Chronicle Pub. Co.*, 992 S.W.2d 642, 647 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (agent's negotiation of contract for principal in Texas ordinarily is not considered agent's

---

[9] A plaintiff may recover from a defendant under a contract or alternatively a quasi-contract theory, such as promissory estoppel or quantum meruit. *See Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 620–21 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

15

jurisdictional contact). Nor did San Pedro allege that Y.Y. Chow or J. Chow made any promise that either of them individually would pay San Pedro under his earn-out agreement—only that their employer AmFELS would. *Cf. id.* at 648 ("By accepting responsibility for payment of the advertisements, [agent], in fact, contracted with the Chronicle for performance in Houston, thereby purposefully establishing the requisite minimum contacts to establish specific jurisdiction."). Although trial courts have exercised specific jurisdiction over individual defendants on contract and quasi-contract claims when the plaintiff has alleged that the individual defendants were parties to and made individual promises regarding the agreement at issue,[10] San Pedro's allegations do not sufficiently implicate Y.Y. Chow's or J. Chow's individual contractual or quasi-contractual liability. *See City of White Settlement v. Emmons*, No. 02-17-00358-CV, 2018 WL 4625823, at \*16 (Tex. App.—Fort Worth Sept. 27, 2018, pet. denied) (mem. op.) (no specific jurisdiction over individual on breach-of-contract and promissory-estoppel claims when "the City Claimants do not allege that Emmons entered into a contract with them or made promises in his individual capacity").

We conclude the trial court erred in deciding that it could exercise specific jurisdiction over Y.Y. Chow and J. Chow as to San Pedro's promissory-estoppel claims. We therefore sustain this portion of Y.Y. Chow's and J. Chow's subissue (2).

### 2. Specific jurisdiction over tort claims

We next consider whether the trial court correctly denied Y.Y. Chow's and J. Chow's special appearances as to San Pedro's tort claims. We determine whether San Pedro sufficiently pleaded and, if and when challenged, presented evidence that

---

[10] *See, e.g.*, *Lucas v. Ryan*, No. 02-18-00053-CV, 2019 WL 2635561, at \*10 (Tex. App.—Fort Worth June 27, 2019, no pet. h.) (mem. op.) (breach-of-contract, quantum-meruit, and promissory-estoppel claims); *Hoagland v. Butcher*, 474 S.W.3d 802, 814–15 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (breach-of-contract and quantum-meruit claims).

16

Y.Y. Chow's and J. Chow's relevant acts occurred, at least in part, in Texas.

### a. Fraud

In the jurisdiction section of his petition, San Pedro alleged that Y.Y. Chow and J. Chow committed torts in whole or in part in Texas by making or directing others to make multiple fraudulent false representations or statements on or about March 18, 1998, and other times, relied upon by San Pedro to his detriment. In the fraud portion of the causes-of-action section of his petition, San Pedro further alleged that Y.Y. Chow and J. Chow both orally and in writing on or about March 18, 1998, and other times and while in Texas, represented that AmFELS's obligation to pay San Pedro under the earn-out agreement after the 1997 transfer agreement was CENSA's obligation and that San Pedro was required to execute the CENSA earn-out agreement to realize the payments. San Pedro alleged that he was told that all necessary documentation and legal requirements relating to the transfer of the earn-out obligation from AmFELS to CENSA were complete and legally enforceable. San Pedro alleged that J. Chow on Y.Y. Chow's instruction insisted on the use of certain language in the CENSA earn-out agreement. San Pedro alleged that these representations were false and material, and Y.Y. Chow and J. Chow made them while in Texas, knew they were false, and intended that San Pedro rely on them. San Pedro alleged that he justifiably relied on the false representations when he executed the CENSA earn-out agreement and the 2004 addendum.

We conclude that San Pedro sufficiently pleaded jurisdictional facts that Y.Y. Chow and J. Chow committed tortious acts—fraud—in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2); *Kelly*, 301 S.W.3d at 659–60; *Emmons*, 2018 WL 4625823, at *14 (nonresident who while physically present in Texas makes fraudulent or negligent misrepresentation "is subject to specific jurisdiction in Texas in a subsequent action arising from the statement"); *Yujie Ren*, 502 S.W.3d at 846–

17

47; *Hoagland v. Butcher*, 474 S.W.3d 802, 810 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

*Y.Y. Chow.* In his special-appearance declaration, Y.Y. Chow stated that he did not participate in the negotiation or drafting of the CENSA earn-out agreement; did not make any representations to, or otherwise communicate with, San Pedro concerning the CENSA earn-out agreement, its terms and conditions, legal effects, or intentions; did not provide any detailed instructions to J. Chow concerning the negotiation, drafting, or specific language of the CENSA earn-out agreement; did not make any representations to J. Chow concerning the terms and conditions, legal effects, or intentions of the CENSA earn-out agreement; did not direct J. Chow to make any specific representations or assurances to San Pedro regarding the CENSA earn-out agreement; and was not aware of any conversations, representations, or assurances by J. Chow to San Pedro concerning the CENSA earn-out agreement. Y.Y. Chow did not sign and was not a party to the CENSA earn-out agreement. Y.Y. Chow also stated that at the latest he was removed from CENSA's board of directors in 2003 and any further dealings among CENSA, San Pedro, and CENSA's new majority shareholder Keppel FELS Energy PTE., Ltd., were not made known to Y.Y. Chow.

San Pedro's response does not allege or provide evidence that Y.Y. Chow in fact was involved in any misrepresentations in Texas concerning the CENSA earn-out agreement or 2004 addendum.[11] Y.Y. Chow's special appearance sufficiently negated these jurisdictional allegations, and San Pedro did not bring evidence otherwise.

Therefore, on this record, we cannot conclude that Y.Y. Chow's purported

---

[11] In addition, at his deposition, San Pedro indicated it was merely "a guess on [his] part" that Y.Y. Chow had been involved in any discussions about the CENSA earn-out agreement.

18

contacts with Texas are sufficient to confer specific jurisdiction over him with regard to San Pedro's fraud claim. We partially sustain subissue (2) as to Y.Y. Chow on San Pedro's fraud claim.

*J. Chow.* J. Chow in his special-appearance declaration stated that he did not participate in the negotiation and drafting of the CENSA earn-out agreement as he is not a Nicaraguan attorney and this task was not within his area of expertise. J. Chow also averred that he did not make any assurances, representations, or otherwise communicate with San Pedro concerning the CENSA earn-out agreement, its terms and conditions, legal effects, or intentions. J. Chow also stated that he was not aware of any conversations, representations, or assurances by Y.Y. Chow to San Pedro concerning the CENSA earn-out agreement, its terms and conditions, legal effects, or intentions. J. Chow did not sign and was not a party to the CENSA earn-out agreement. J. Chow also stated that he was not involved with the 2004 addendum.

In response, San Pedro's affidavit pointed to specific contacts by J. Chow in Texas containing his alleged misrepresentations concerning the CENSA earn-out agreement. In March 1998, according to San Pedro, J. Chow called him from Texas and told him that he had to sign an earn-out agreement with CENSA. J. Chow also immediately afterward sent San Pedro a fax containing the first three clauses that J. Chow required to be included in the CENSA earn-out agreement. After reading the language and translating it to Spanish, San Pedro called back J. Chow in Texas. During that call, J. Chow explained that he included language relating to a prohibition of assignment to make sure San Pedro's wife and son were taken care of in case something happened to San Pedro. San Pedro also asked J. Chow if everything was taken care of and in proper form, and J. Chow assured him that it was. Based on this statement, San Pedro signed the CENSA earn-out agreement, which contained language about the so-called assignment of the earn-out obligation

19

from AmFELS to CENSA, which the Nicaraguan court ultimately declared to be a nullity. In other words, San Pedro directly contradicted J. Chow's denials. *See Emmons*, 2018 WL 4625823, at \*14.

J. Chow's March 1998 contacts in and with Texas were purposeful. They related to business arrangements and agreements involving Texas entity AmFELS, for which he served as counsel, and involving CENSA, which had been previously sold to AmFELS, and on whose board J. Chow served. Such contacts were not the result of unilateral activity of a third party; they were neither random nor fortuitous; and J. Chow sought the benefit and privilege of doing business within Texas. Moreover, there is a substantial connection between those forum contacts and the operative facts of the alleged fraud. San Pedro alleged and presented evidence that J. Chow's fraudulent conduct took place via phone calls made and a fax sent while J. Chow was in Texas.[12] *See Emmons*, 2018 WL 4625823, at \*14–15; *Yujie Ren*, 502 S.W.3d at 850–51; *Hoagland*, 474 S.W.3d at 812–15.

In his special appearance, J. Chow further argued that San Pedro had not set forth a legally-valid fraud claim.[13] On appeal, J. Chow argues that he could not be liable on San Pedro's fraud claim because it related to the legal effect of a document, was too vague of a statement, involved an unfulfilled promise of future performance, and there was no evidence of intent not to perform based on over a decade of performance. J. Chow ultimately may prevail on one of these theories. However, at the jurisdictional stage, we may not consider the merits of San Pedro's claims and

---

[12] In his reply, J. Chow challenged the "convenient allegations" in San Pedro's "self-serving affidavit" and requested that the trial court disregard them. J. Chow also requested that he be able to file a controverting affidavit. The record does not indicate that the trial court ruled on these issues, and J. Chow does not raise them on appeal.

[13] In support, J. Chow cited a case that addressed the legal sufficiency of the evidence of the intent element of fraud to support a jury verdict on the merits, not a jurisdictional inquiry on a special appearance.

must look merely to J. Chow's contacts with Texas to determine whether jurisdiction exists. *See, e.g.*, *Michiana*, 168 S.W.3d at 791 (Tex. 2005) ("Business contacts are generally a matter of physical fact, while tort liability (especially in misrepresentation cases) turns on what the parties thought, said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in trying the latter."); *Moncrief Oil*, 414 S.W.3d at 156 n.15; *Yujie Ren*, 502 S.W.3d at 850; *Hoagland*, 474 S.W.3d at 813 ("At the jurisdiction phase, we examine business contacts, not what the parties thought or intended, which is the role of the factfinder in assessing the merits of the claims alleged.").[14]

We conclude that J. Chow has sufficient minimum contacts with Texas to establish personal jurisdiction as to San Pedro's fraud claim.

### b. Negligent misrepresentation

In the jurisdiction section of his petition, San Pedro alleged that Y.Y. Chow and J. Chow committed torts in whole or in part in Texas by making or directing others to make multiple negligent false representations or statements on or about March 18, 1998, and other times, relied upon by San Pedro to his detriment. In the negligent-misrepresentation portion of his petition, San Pedro alleged that Y.Y. Chow and J. Chow while in Texas represented to him that he would be paid certain monies under an earn-out agreement for his efforts in securing the 1996 PPA, for the sale of CENSA, and for the construction of the Nicaraguan power plant and sale of energy produced; that the payments due under the agreed-to earn-out were properly assigned to, and the financial responsibility of, CENSA; and that all appropriate legal formalities necessary to legally assign payments to San Pedro under an earn-out

---

[14] At the special-appearance hearing, the trial court seemingly recognized that "merits" issues were "for another day." The trial court asked Y.Y. Chow's and J. Chow's counsel: "Just curious: Y'all are coming back soon, I presume, on a Motion for Summary Judgment." Counsel answered: "Yes. There is—probably there are going to be Motions for Summary Judgment."

agreement were executed and enforceable. San Pedro alleged that he justifiably relied on these representations when he agreed to sell CENSA to AmFELS, when he agreed to enter into the AmFELS earn-out agreement, when he agreed to enter into the CENSA earn-out agreement and 2004 addendum, and when he contracted to build the Nicaraguan power plant.

We conclude that San Pedro sufficiently pleaded jurisdictional facts that Y.Y. Chow and J. Chow made negligent misrepresentations in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2); *Kelly*, 301 S.W.3d at 659–60; *Emmons*, 2018 WL 4625823, at \*14; *Yujie Ren*, 502 S.W.3d at 846–47 & n.3.[15]

*Y.Y. Chow.* With regard to negligent misrepresentation, in his special-appearance reply, Y.Y. Chow focused on what he calls "mere conjecture," *i.e.*, the "phantom phone facsimile and telephone call from Jeffery Chow" from Texas in March 1998. We already have determined that Y.Y. Chow negated allegations that he was involved in the CENSA earn-out agreement as to San Pedro's fraud claim. Therefore, we do not consider these contacts with regard to San Pedro's negligent-misrepresentation claim against Y.Y. Chow.

*J. Chow.* In his special-appearance reply, J. Chow also focused on the "phantom" March 1998 Texas contacts in connection with the CENSA earn-out agreement. However, we already have concluded that these March 1998 contacts with Texas constituted minimum contacts for the trial court to exercise personal jurisdiction over J. Chow on San Pedro's fraud claim. We likewise conclude they

---

[15] We disagree with Y.Y. Chow and J. Chow that San Pedro's claims are bare or conclusory and that his claims do not allege any specific tortious acts attributed to them as individuals. Moreover, unlike in the cases cited by Y.Y. Chow and J. Chow, San Pedro did not generally complain only of AmFELS's misconduct, merely allege that Y.Y. Chow and J. Chow were using the corporate form to commit tortious acts, or fail to provide details regarding the alleged tortious acts.

constitute minimum sufficient contacts with regard to San Pedro's negligent-misrepresentation claim against J. Chow.

*Other Texas contacts by both Y.Y. Chow and J. Chow.* Contrary to Y.Y. Chow's and J. Chow's assertions, San Pedro's negligent-misrepresentation claims do not hinge solely on their alleged tortious conduct in connection with the (lack of) assignment of AmFELS's earn-out agreement and the CENSA earn-out agreement. San Pedro's claims also relate to allegedly negligent misrepresentations made in Texas regarding San Pedro's being paid certain monies under the AmFELS earn-out agreement for his 1996 PPA work, for his sale of CENSA, and for his work on the Nicaraguan power plant.

Moreover, San Pedro alleged and presented evidence of multiple contacts Y.Y. Chow and J. Chow had in Texas with San Pedro concerning these compensation aspects of his relationship with AmFELS, including:

- eight days of meetings in Brownsville in June 1995 when San Pedro was negotiating with both Y.Y. Chow and J. Chow the terms of his compensation for his power-development work for AmFELS and his sale of CENSA;

- a meeting in Brownsville in August 1996 when San Pedro discussed with Y.Y. Chow and J. Chow the conditions of his sale of CENSA to AmFELS and his request for an earn-out agreement; and

- a meeting in Brownsville on January 22, 1997, when San Pedro discussed with Y.Y. Chow and J. Chow the previous agreement of his earn-out payments for his work on AmFELS's behalf; J. Chow prepared and presented the AmFELS earn-out agreement for San Pedro's review and signature; and Y.Y. Chow and San Pedro signed, and J. Chow initialed, the AmFELS earn-out agreement.

Y.Y. Chow and J. Chow did not sufficiently deny or negate these jurisdictional

23

allegations in their declarations.[16]

Both Y.Y. Chow's and J. Chow's contacts in and with Texas were purposeful; they related to business arrangements and agreements involving Texas entity AmFELS, for which Y.Y. Chow served as president and J. Chow served as legal counsel. These contacts were not the result of unilateral activity of a third party, and were neither random nor fortuitous. And Y.Y. Chow and J. Chow sought the benefit and privilege of doing business within Texas. Moreover, there is a substantial connection between those forum contacts and the operative facts of the alleged negligent misrepresentations. San Pedro alleged and presented evidence that such negligent misrepresentations concerning payment for his AmFELS work took place during various meetings Y.Y. Chow and J. Chow conducted in Brownsville. *See Emmons*, 2018 WL 4625823, at *14–15; *Yujie Ren*, 502 S.W.3d at 850–51.

In their brief, Y.Y. Chow and J. Chow argue they cannot be liable on San Pedro's negligent-misrepresentation claims because such claims concern promises of future conduct or the legal effect of a document rather than statements of existing fact. But we cannot consider the merits of San Pedro's negligent-misrepresentation claims at the special-appearance stage. *See, e.g.*, *Michiana*, 168 S.W.3d at 791; *Moncrief Oil*, 414 S.W.3d at 156 n.15; *Yujie Ren*, 502 S.W.3d at 850; *Hoagland*, 474 S.W.3d at 813. They also contend that San Pedro's contract claim against AmFELS instead provides him "the appropriate remedy." Although San Pedro's tort

---

[16] In his declaration, Y.Y. Chow acknowledged that he resided in Brownsville at the relevant times and that while he was president of AmFELS, AmFELS was working to establish power-plant projects in Nicaragua. Y.Y. Chow further acknowledged that his direct involvement in communications with San Pedro about his compensation or fees ceased about May 1997.

In his reply, J. Chow did "not deny that meetings took place in Texas." In his declaration, J. Chow acknowledged that during his time at AmFELS, AmFELS was working to establish power-plant projects in Nicaragua, entered into the 1996 PPA with ENEL, engaged San Pedro's company USA Power & Light, Inc., to construct the Nicaraguan power plant, and assigned the 1996 PPA to CENSA in January 1997.

claims may be related to his contract claim, he brings specific allegations concerning Y.Y. Chow's and J. Chow's individual tortious conduct that do not merely recast his contract claim against AmFELS. *See Emmons*, 2018 WL 4625823, at \*15.

We conclude that these Texas contacts (plus as to J. Chow, the March 1998 Texas contacts) are sufficient for the trial court to exercise personal jurisdiction over both Y.Y. Chow and J. Chow on San Pedro's negligent-misrepresentation claims.

### c. Breach of fiduciary duty

In the jurisdiction section of his petition, San Pedro alleged that Y.Y. Chow's and J. Chow's conduct and contacts in Texas with San Pedro created fiduciary relationships with San Pedro, both formal and informal, which they breached by their conduct in Texas. In the breach-of-fiduciary-duty portion of his petition, San Pedro alleged that he and Y.Y. Chow and he and J. Chow had fiduciary relationships, both formal and informal. San Pedro alleged that both Y.Y. Chow and J. Chow allegedly recognized the "trust the parties had with each other during the relationship." San Pedro alleged Y.Y. Chow and J. Chow breached their fiduciary duties by failing to conduct themselves with candor, failing to conduct themselves with utmost integrity, failing to be fair and honest with their dealings with San Pedro (including from Texas), and failing to fully disclose all material information concerning the transactions, including AmFELS's failure to properly assign its earn-out agreement to CENSA. San Pedro alleged that Y.Y. Chow's and J. Chow's breaches of their fiduciary duties injured him by denying him certain payments promised to him.

We conclude that San Pedro sufficiently pleaded jurisdictional facts that Y.Y. Chow and J. Chow committed acts in Texas that breached their formal or informal fiduciary duties to him. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2); *Turman v. POS Partners, LLC*, 541 S.W.3d 895, 904–05 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Yujie Ren*, 502 S.W.3d at 846–47 & n.3.

25

San Pedro's jurisdictional allegations on his breach-of-fiduciary-duty claims essentially track Y.Y. Chow's and J. Chow's other alleged tortious contacts in the form of their various meetings and discussions in Texas stemming from 1995 to 1997 (1998 for J. Chow) with San Pedro concerning his compensation for his work for AmFELS.[17] *See Moncrief Oil*, 414 S.W.3d at 150–51. Similarly, Y.Y. Chow and J. Chow did not deny or sufficiently negate these jurisdictional allegations (except as to the fraud claim against Y.Y. Chow). Nor did they deny or negate that they shared "trust"-based relationships with San Pedro at the time of these contacts in Texas. We conclude that Y.Y. Chow's and J. Chow's contacts in and with Texas constituted minimum contacts and there is a substantial connection between those forum contacts and the operative facts of the alleged breaches of their fiduciary duties. *See Turman*, 541 S.W.3d at 904–05; *Yujie Ren*, 502 S.W.3d at 850–51.

In the trial court and in their brief, Y.Y. Chow and J. Chow argue that San Pedro cannot prevail on his breach-of-fiduciary-duty claims because as an agent San Pedro was the only person who owed any fiduciary duties and because mere subjective trust in the context of a business relationship or an arm's-length deal does not create an informal fiduciary relationship. However, such arguments concern the merits of San Pedro's breach-of-fiduciary-duty claims, and we will not consider them at the special-appearance stage. *See, e.g.*, *Michiana*, 168 S.W.3d at 791; *Moncrief Oil*, 414 S.W.3d at 156 n.15; *Yujie Ren*, 502 S.W.3d at 850; *Hoagland*, 474 S.W.3d at 813.

We conclude that Y.Y. Chow's and J. Chow's Texas contacts are sufficient for the trial court to exercise personal jurisdiction over both Y.Y. Chow and J. Chow on San Pedro's breach-of-fiduciary-duty claims.

---

[17] Y.Y. Chow and J. Chow again mistakenly focus on the March 1998 contacts. San Pedro's breach-of-fiduciary-duty claims against them do not solely hinge on such conduct.

### d. *Fair play and substantial justice*

We also must consider whether exercising specific jurisdiction over Y.Y. Chow and J. Chow would offend traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316; *BMC Software*, 83 S.W.3d at 795.

Y.Y. Chow and J. Chow bear the burden of presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Burger King Corp. v. Rudzewiez*, 471 U.S. 462, 477 (1985); *Guardian Royal*, 815 S.W.2d at 231. Despite this burden, they present no issue or argument on this point. *See* Tex. R. App. P. 38.1(f), (i). In any event, we conclude this is not one of those rare cases in which a Texas court's exercise over a nonresident defendant with sufficient minimum contacts would offend due process. There would be minimal burden on Y.Y. Chow to adjudicate the dispute in Texas—a state in which he has access to a house and to which he still travels for business. Nor is there any indication that J. Chow would be especially burdened by travel to Texas. *See Moncrief Oil*, 414 S.W.3d at 155 ("Distance alone cannot ordinarily defeat jurisdiction."). Texas has a significant interest in resolving claims for torts committed in Texas. *See id.* San Pedro has an interest in being able to litigate this controversy, which also involves alleged breach of contract by a Texas entity, in a single, convenient forum. Litigating the claims as to all parties at one time in one Texas court further promotes judicial economy. *See id.* On balance, the burden on Y.Y. Chow and J. Chow of litigating in a foreign jurisdiction is minimal and outweighed by Texas's interest. *See id.* at 155–56. They have not met their burden to show that exercising personal jurisdiction over them offends fair play and substantial justice. *See Burger King*, 471 U.S. at 477; *Guardian Royal*, 815 S.W.2d at 231.

We overrule the remainder of subissue (2).

### III. CONCLUSION

In sum, Y.Y. Chow's contacts with Texas are insufficient to support the exercise of general jurisdiction over Y.Y. Chow, are insufficient to support specific jurisdiction over Y.Y. Chow with regard to San Pedro's claims for promissory estoppel and fraud, but are sufficient to support specific jurisdiction over Y.Y. Chow with regard to San Pedro's claims for negligent misrepresentation and breach of fiduciary duty.

J. Chow's contacts with Texas are insufficient to support the exercise of specific jurisdiction over J. Chow with regard to San Pedro's claim for promissory estoppel, but are sufficient to support specific jurisdiction over J. Chow with regard to San Pedro's claims for fraud, negligent misrepresentation, and breach of fiduciary duty.

We therefore reverse in part the trial court's order concerning Y.Y. Chow and render judgment granting Y.Y. Chow's special appearance with regard to and dismissing San Pedro's claims against Y.Y. Chow for promissory estoppel and fraud. We reverse in part the trial court's order concerning J. Chow and render judgment granting J. Chow's special appearance with regard to and dismissing San Pedro's claim against J. Chow for promissory estoppel. We otherwise affirm.

/s/     Charles A. Spain
          Justice

Panel consists of Justices Wise, Zimmerer, and Spain.