**Affirmed and Opinion filed September 22, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00035-CV

---

## YUJIE REN, Appellant

## V.

## ANU RESOURCES, LLC, Appellee

---

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2014-57054**

---

## O P I N I O N

Today, we again confirm that a defendant cannot evade jurisdiction in Texas simply by contending that his contacts with Texas were made in a representative capacity when that defendant allegedly committed intentional torts in Texas. In one issue, appellant Yujie Ren challenges the trial court's order denying his special appearance, primarily because he alleges that all of his contacts with Texas were made in a representative capacity. We affirm.

## *Background*

Appellee ANU Resources, LLC is in the business of acquiring, developing, and operating oil and gas assets. Robert Reyes contacted Lisa Qualls at ANU, advised her that he had located an opportunity to acquire property for oil and gas production in West Texas, and asked her to look for potential investors. This potential project became known as "Ground Zero." Qualls passed the Ground Zero description to Jim Jeffrey, who agreed to assist in finding investors from China. Jeffrey brought in Changlin Wu of Longwoods Resources, LLC, a company with locations in Beijing, China, and Chicago, Illinois. ANU and Longwoods entered into a "Memorandum of Understanding," resolving to "jointly participate from time to time in [exploration and production] opportunities around the world." Among other things, Longwoods agreed to "[e]xchange information with [ANU] relating to all issues known to [Longwoods] about potential investors and/or lenders as it relates to" exploration and production opportunities.

Wu asked Qualls to conduct a meeting to discuss such opportunities, including Ground Zero, with potential investors from China. Ren attended the meeting as a representative of several Chinese entities. Wu subsequently encouraged Ren to acquire oil and gas leases for Ground Zero. "Technical leadership" and "business leadership" teams were created to manage the "economic and development strategy for pursuing Ground Zero." ANU was excluded from these teams, but Ren was on the business leadership team. Ren was also identified as an "initial confirmed shareholder" in Ground Zero.

Harmonia Petroleum Corporation was incorporated in Texas. A "Final Sale and Restated Purchase Agreement" for the sale of the Ground Zero oil and gas leases was executed, with Harmonia as the buyer. Ren signed the agreement on

behalf of Harmonia as its CEO.[1]

ANU filed suit against Longwoods, Harmonia, Reyes, Ren, Wu, and Jeffrey, alleging, among other things, that (1) Longwoods, Wu, Jeffrey, and Reyes conspired to coopt the Ground Zero opportunity for themselves and away from ANU; (2) Longwoods procured investors for Ground Zero; (3) the investors attended presentations about Ground Zero put on by ANU; (4) without informing ANU, Longwoods and its investor group acquired Ground Zero in violation of the Memorandum of Understanding; and (5) the investor group formed Harmonia to acquire Ground Zero to the exclusion of ANU. ANU brought claims against Longwoods for various breaches of contract and breaches of fiduciary duties and against all the defendants for fraud, tortious interference, and conspiracy to commit various torts.

Ren filed a special appearance, asserting that (1) ANU did not meet its burden to plead sufficient jurisdictional facts as to Ren; (2) Ren is not subject to personal jurisdiction in Texas under the fiduciary shield doctrine because he did not conduct business in Texas in his individual capacity; (3) Ren does not have sufficient jurisdictional contacts with Texas in his individual capacity to give rise to specific jurisdiction; (4) Texas courts do not have general jurisdiction over Ren; and (5) the trial court's exercise of jurisdiction over Ren would offend traditional notions of fair play and substantial justice. The trial court denied Ren's special appearance.

### *Discussion*

On appeal, Ren challenges the trial court's denial of his special appearance on the grounds that (1) ANU did not plead sufficient jurisdictional facts to invoke

---

[1] Ren also became the president and a director of Harmonia. Reyes became the general manager.

3

the jurisdiction of Texas courts; (2) the fiduciary shield doctrine prevents Ren from being subject to specific jurisdiction in Texas; (3) Ren does not have sufficient contacts with Texas in his individual capacity to subject him to specific jurisdiction in Texas;[2] (4) ANU's claims do not establish specific jurisdiction over Ren; (5) Texas courts do not have general jurisdiction over Ren; and (6) exercising jurisdiction over Ren would offend traditional notions of fair play and substantial justice in violation of constitutional due process.

## I.     Sufficient Jurisdictional Facts Alleged

A plaintiff bears the initial burden of alleging facts sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). The Texas long-arm statute allows the exercise of personal jurisdiction over a nonresident defendant who "commits a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code § 17.042(2). In conducting our review, we accept as true the allegations in the petition. *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Ren argues that ANU's *second amended petition* "lacks sufficient factual allegations to invoke jurisdiction under the Texas long-arm statute against Mr. Ren individually." The live petition at the time the trial court denied the special appearance, however, was the *third amended petition*, which was filed after Ren filed his special appearance. A plaintiff may amend its petition to include necessary jurisdictional facts after a special appearance has been filed, which enables the trial court to decide jurisdiction based on evidence rather than allegations. *See Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 659 & n.6

---

[2] This is another iteration of the fiduciary shield doctrine argument, but we address the sufficiency of Ren's contacts with Texas as a separate issue.

(Tex. 2010) (citing Tex. R. Civ. P. 63). Accordingly, we shall analyze whether ANU pleaded sufficient jurisdictional facts based on the allegations in its third amended petition.

ANU alleged in its third amended petition, among other things:

- Ren was a member of the investor group. In reliance on the Memorandum of Understanding and the representations of Longwoods, ANU disclosed to Longwoods and the investor group "the type of due diligence information and contacts that one would need to know to acquire and develop" Ground Zero.

- Defendants formed Harmonia and excluded ANU. Ren was appointed as the president and a director of Harmonia. Defendants caused Harmonia to acquire the Ground Zero oil and gas leases, using the funding source that ANU had lined up and relying on landmen and consultants who were identified through discussions with ANU. Ren signed the agreement on behalf of Harmonia. Ren failed to advise ANU of his plan to acquire Ground Zero through Harmonia.

- Longwoods, in concert with the investor group, "while knowing that ANU expected valuable compensation and benefit, availed itself of the opportunity [ANU had developed], and by use of fraud, deception, tortious and wrongful conduct unjustly enriched itself and its allies in the [investor group] that formed Harmonia." Defendants also tortiously interfered with the Memorandum of Understanding.

- "Ren did business in Texas and committed torts in Texas arising out of his Texas contacts."

The gist of the third amended petition as relevant to our analysis is this: Longwoods and ANU were working together on an opportunity to acquire Ground Zero, and they memorialized their partnership through the Memorandum of Understanding. Longwoods brought in investors from China, including Ren, to whom ANU presented this opportunity in Texas. Relying on the Memorandum of Understanding, ANU shared information regarding the acquisition and development of Ground Zero. Longwoods then persuaded the investors to purchase

5

the Ground Zero oil and gas leases but to exclude ANU from the transaction. In so doing, the investors tortiously interfered with the Memorandum of Understanding, and the defendants defrauded ANU by divesting it of its share in Ground Zero. These tortious acts purportedly occurred in Texas because the meeting with ANU was held there and the physical Ground Zero project was in Texas.

We conclude that ANU pleaded jurisdictional facts that Ren committed tortious acts—tortious interference with contract and fraud, among other things—in Texas.[3] *See id*. at 659-60 (holding plaintiff was required to allege defendants committed fraudulent acts in Texas to satisfy his initial burden of pleading jurisdictional facts); *see also Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840, 847 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding plaintiff's allegation that defendants committed torts in Texas was sufficient to bring defendants under the long-arm statute).[4] Accordingly, ANU met its burden of alleging facts sufficient to bring Ren within the terms of the Texas long-arm statute.

---

[3] ANU also alleges that Ren aided and abetted Longwoods in breaching fiduciary duties to ANU and that Ren is liable under theories of unjust enrichment, tortious interference with business relations, breach of a confidential relationship, and negligent misrepresentation. We need not discuss these claims separately because ANU otherwise has pleaded sufficient jurisdictional facts and all of ANU's claims arise from the same forum contacts. *See Moncrief*, 414 S.W.3d at 150–51.

[4] Ren argues that the trial court cannot exercise personal jurisdiction over him based on ANU's allegation that Ren conspired with the other defendants to defraud ANU. The Texas Supreme Court has declined to validate the assertion of personal jurisdiction over a nonresident defendant "based *solely* upon the effects or consequences of an alleged conspiracy with a resident in a forum state." *See Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (emphasis added). Civil conspiracy is regarded as a derivative tort because a defendant's liability for conspiracy depends on its participation in an underlying tort. *Fjell Tech. Group v. Unitech Int'l, Inc.*, No. 14-14-00255-CV, 2015 WL 457805, at *7 n.4 (Tex. App.—Houston [14th Dist.] Feb. 3, 2015, pet. denied) (mem. op.). Thus, we focus on the underlying torts in our jurisdictional analysis and not on the conspiracy claims. *See id*. Moreover, ANU has not alleged only conspiracy claims against Ren. For example, ANU's tortious interference with contract claim is a direct claim against Ren, as is ANU's fraud claim.

## II. Failure to Negate All Potential Bases for Personal Jurisdiction

When the initial burden of alleging facts sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute is met, the burden shifts to the nonresident defendant to negate all potential bases for personal jurisdiction the plaintiff pleaded. *Moncrief*, 414 S.W.3d at 149. A nonresident defendant may negate jurisdiction on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659; *Hoagland v. Butcher*, 474 S.W.3d 802, 810 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Factually, the defendant may present evidence that it has insufficient contacts with Texas, effectively disproving the plaintiff's allegations; the plaintiff then may respond with his own evidence that affirms his allegations. *Kelly*, 301 S.W.3d at 659. Legally, the defendant may show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Kelly*, 301 S.W.3d at 659; *Hoagland*, 474 S.W.3d at 810.

When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Moncrief*, 414 S.W.3d at 150; *Hoagland*, 474 S.W.3d at 811. The ultimate question of whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief*, 414 S.W.3d at 150; *Hoagland*, 474 S.W.3d at 811. However, if a factual dispute exists, we are called upon to review the trial court's resolution of the factual dispute as well. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Hoagland*, 474 S.W.3d at 811.

The trial court's inferred factual findings are not conclusive and may be challenged for legal and factual sufficiency when this court has a complete record on appeal. *Hoagland*, 474 S.W.3d at 811. When examining a legal sufficiency challenge, we review the evidence in the light most favorable to the challenged

finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Hoagland*, 474 S.W.3d at 811. We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Keller*, 168 S.W.3d at 827; *Hoagland*, 474 S.W.3d at 811. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to find the fact under review. *Keller*, 168 S.W.3d at 827; *Hoagland*, 474 S.W.3d at 811. A legal sufficiency challenge will be sustained if the record reveals that evidence offered to prove a vital fact is no more than a scintilla. *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014). The factfinder is the sole judge of witnesses' credibility and the weight to be given their testimony. *Keller*, 168 S.W.3d at 819; *Hoagland*, 474 S.W.3d at 811.

In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the fact finder or pass upon the credibility of witnesses. *Id.*

A trial court's assertion of personal jurisdiction over a defendant comports with due process when the nonresident defendant has minimum contacts with the forum state and asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief*, 414 S.W.3d at 150; *Hoagland*, 474 S.W.3d at 810-11. A defendant establishes minimum contacts with a forum when he purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Moncrief*, 414 S.W.3d at 150; *Hoagland*, 474 S.W.3d at 811.

We consider three factors to determine whether a nonresident purposely

availed himself of the privilege of conducting activities in Texas: (1) the defendant's contacts with the forum, not the unilateral activity of another party; (2) whether the contacts were purposeful rather than random, isolated, or fortuitous; and (3) whether the defendant has sought some benefit, advantage, or profit by availing himself of the jurisdiction. *Moncrief*, 414 S.W.3d at 151. This analyzes the quality and nature of the contacts, not the quantity. *Id*. Accordingly, a single contact may be sufficient to establish specific jurisdiction. *Id*. At its core, the purposeful availment analysis seeks to determine whether a nonresident's conduct and connection to a forum are such that he could reasonably anticipate being haled into court there. *Id*. at 152.

Specific jurisdiction focuses on the relationship between the defendant, Texas, and the litigation to determine whether the claims arise from the Texas contacts.[5] *Id.* at 150. Specific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis. *Id*. But we need not do so if all claims arise from the same forum contacts. *Id.* at 150–51.

ANU's claims all arise from the same forum contacts: that Ren traveled to Texas to meet with Longwoods and ANU regarding oil and gas prospects, learned about Ground Zero from ANU's presentation in Texas, formed Harmonia with other defendants to acquire Ground Zero, and conducted business on behalf of Harmonia in Texas in furtherance of acquiring and developing Ground Zero to the

---

[5] A nonresident's contacts can give rise to general or specific personal jurisdiction. *Moncrief*, 414 S.W.3d at 150; *Hoagland*, 474 S.W.3d at 811. Continuous and systematic contacts with a state give rise to general jurisdiction, while specific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the state. *Moncrief*, 414 S.W.3d at 150; *Hoagland*, 474 S.W.3d at 811. Ren challenges the trial court's exercise of both general and specific jurisdiction. Because we conclude below that Ren is subject to specific jurisdiction, we need not address his argument that his contacts with Texas do not give rise to general jurisdiction. *See Phillips Dev. & Realty, LLC v. LJA Eng'g, Inc.*, No. 14-14-00858-CV, 2016 WL 3610457, at *1 n.4 (Tex. App.—Houston [14th Dist.] June 30, 2016, no. pet. h.).

exclusion of ANU. Accordingly, we need not address each claim independently. *See id.*

## A. Fiduciary Shield Doctrine Inapplicable

Relying on *Stull v. LaPlant*, 411 S.W.3d 129, 137–38 (Tex. App.—Dallas 2013, no pet.), Ren argues that he is not subject to specific jurisdiction in Texas under the fiduciary shield doctrine because he did not conduct business in Texas in his individual capacity. Rather, he claims that his actions were on behalf of Chinese corporate entities.

Under the fiduciary shield doctrine, a nonresident officer or employee may not be subject to personal jurisdiction when all of his contacts with the forum state were made on behalf of his corporation or employer. *See Cerbone v. Farb*, 225 S.W.3d 764, 769 (Tex. App.—Houston [14th Dist.] 2007, no pet.). However, this court has repeatedly held that the doctrine does not protect a corporate representative from the exercise of specific jurisdiction as to intentional torts or fraudulent acts for which he may be held individually liable. *See, e.g., Fjell Tech. Group v. Unitech Int'l, Inc.*, No. 14-14-00255-CV, 2015 WL 457805, at *5 (Tex. App.—Houston [14th Dist.] Feb. 3, 2015, pet. denied) (mem. op.); *Cerbone*, 225 S.W.3d at 769.

In *Stull*, the Dallas Court of Appeals applied the fiduciary shield doctrine to contract claims, not tort claims. *See* 411 S.W.3d at 137–38 ("[I]f a plaintiff asserts only specific jurisdiction regarding *an alleged breach of contract* against a non-resident agent of the contracting party, the agent's contacts with Texas in furtherance of the principal's business are attributable only to the employer, not to the agent, because the fiduciary shield doctrine applies.") (emphasis added). The court expressly acknowledged that the doctrine "does not protect [corporate

representatives] from liability for their own torts."[6] *Id*. at 138.

Here, ANU has alleged intentional torts against Ren for which he can be held individually liable, primarily for tortiously interfering with the Memorandum of Understanding and defrauding ANU. *See Fjell Tech. Group*, 2015 WL 457805, at *5 (citing *Shapolsky v. Brewton*, 56 S.W.3d 120, 133 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("[C]orporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation.")). We therefore reject Ren's argument that he is entitled to protection from jurisdiction simply because his acts were allegedly done in a corporate capacity. *See id*.

### B. Purposeful Contacts with Texas by Ren

A nonresident defendant's contacts with the forum are not unilateral or random and fortuitous when the defendant has created continuing obligations between himself and residents of the forum because the defendant has availed himself of the privilege of conducting business there and thus is entitled to the benefits and protections of the forum's laws. *Moncrief*, 414 S.W.3d at 151 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Ren submitted evidence of the following facts in support of his special appearance. Ren traveled to Texas to learn about oil and gas prospects and consider investment opportunities in such prospects. During this trip, he attended a presentation during which ANU discussed investment prospects, including Ground Zero. Ren subsequently attended a dinner meeting in Texas with Wu and Scott Bryant, the Ground Zero oil and gas lease seller's agent. Harmonia, a Texas

---

[6] Moreover, as this court has noted, most Texas courts applying the fiduciary shield doctrine have limited its application to attempts to exercise general—not specific—jurisdiction over a nonresident defendant. *Cerbone*, 225 S.W.3d at 769; *Perna v. Hogan*, 162 S.W.3d 648, 659 n.7 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

corporation headquartered in Texas, was formed to acquire Ground Zero. Ren was designated as the president and CEO of Harmonia.[7] Ren conducted business on behalf of Harmonia in Texas.[8]

These contacts with Texas were purposeful and substantial contacts by Ren because they were aimed at acquiring and developing business in Texas. *See Hoagland*, 474 S.W.3d at 813. Ren met with Wu and Bryant in furtherance of procuring Ground Zero, was involved in forming Harmonia, the Texas corporation that acquired Ground Zero, and conducted business in Texas on behalf of Harmonia. Rather than being fortuitous, isolated, or attenuated, these contacts were part of a general plan to acquire and develop Ground Zero in Texas and make money from a project located in Texas. *See Searcy v. Parex Res., Inc.*, No. 14-0293, 2016 WL 3418248, at *13 (Tex. June 17, 2016).

### C. Benefits, Advantages, and Profits Sought by Ren

Far from seeking to avoid Texas, Ren sought to profit from doing business in Texas through his role in acquiring and developing Ground Zero. *See Moncrief*, 414 S.W.3d at 154. Ren makes a number of arguments related to the merits of ANU's claims, i.e., that he did not participate in the acquisition of Ground Zero in his personal capacity; agree personally or on behalf of the Chinese entities "to engage in any kind of contractual, investment, or business relationship with ANU"; or "perpetrate[] a fraud on ANU." We may not consider the merits of ANU's claims at the jurisdiction stage. *See Hoagland*, 474 S.W.3d at 813. We look merely

---

[7] Ren alleges that he held these titles "in name only." This allegation deals with the merits of ANU's claims, not with whether Ren had substantial contacts with Texas giving rise to personal jurisdiction.

[8] Without citing any authority, Ren asserts that the relevant timeframe for our jurisdictional inquiry begins with ANU's presentation involving Ground Zero and ends with Harmonia acquiring Ground Zero. We take no position on whether Ren is correct as to the relevant timeframe; nevertheless, our jurisdictional analysis focuses on this timeframe.

to Ren's contacts with the forum to ascertain whether jurisdiction exists. *See id.*; *see also Searcy*, 2016 WL 3418248, at *7.

Ren also argues that ANU was required to show that Ren was "advancing his own [personal] interest" or that he was an alter ego of his employer to establish jurisdiction over Ren. In making this argument, Ren conflates the fiduciary shield doctrine, which does not apply under these circumstances, and the merits of ANU's liability claim against Ren. Whether Ren is ultimately liable is not at issue at this stage of the litigation. Ren makes a number of other arguments contending that ANU's claims do not give rise to personal jurisdiction over him. But the nature of ANU's claims does not control whether the trial court has specific jurisdiction over Ren. *See Hoagland*, 474 S.W.3d at 813. Instead, we look to the nature of Ren's *contacts* with the forum. *See id*.

The undisputed evidence demonstrates that Ren's contacts in Texas were not the result of unilateral activity of a third party; the contacts were neither random nor fortuitous; and Ren sought the privilege of doing business within Texas. Accordingly, the evidence supports the trial court's implied finding that Ren purposely availed himself of conducting business in Texas. *See Hoagland*, 474 S.W.3d at 813.

### D. Substantial Connection between Texas and Operative Facts

For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there also must be a substantial connection between those contacts and the operative facts of the litigation. *Moncrief*, 414 S.W.3d at 156. Ren's only argument as to whether his contacts relate to ANU's claims is that his contacts "are all attributable to his role as a representative of business entities, not as an individual." As discussed, whether Ren is ultimately found to be personally liable or to be protected from liability based on his assertion that he took no actions

in his personal capacity is a merits issue related to Ren's potential liability and does not indicate whether his contacts have a substantial connection with the facts underpinning ANU's claims.

ANU alleges that Longwoods brought in Ren as a potential investor in Ground Zero, a Texas project. ANU presented this opportunity to Ren and others in Texas. In so doing, ANU shared confidential information regarding the acquisition and development of Ground Zero. According to ANU, Longwoods and the investors pursued and purchased Ground Zero while intentionally excluding ANU, and Ren was instrumental in this endeavor. The operative facts for these claims are events that occurred in Texas. We conclude there is a substantial connection between Ren's contacts with Texas and the operative facts of the litigation and thus the pleadings and evidence support the trial court's implied finding in support of its conclusion that it had jurisdiction over Ren. *See Hoagland*, 474 S.W.3d at 815. We next address whether the trial court's exercise of personal jurisdiction over Ren would offend traditional notions of fair play and substantial justice.

### III. Exercise of Jurisdiction Consistent with Traditional Notions of Fair Play and Substantial Justice

Ren argues that the trial court's exercise of jurisdiction over him would offend traditional notions of fair play and substantial justice inconsistent with the constitutional requirements of due process because traveling from China would be "highly inconvenient" and Ren's visits to Texas were in a representative capacity. In deciding this issue, we consider (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the

14

shared interests of the several states in furthering fundamental substantive social policies. *Moncrief*, 414 S.W.3d at 155. When the nonresident defendant has purposefully established minimum contacts with the forum state, only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice. *Id.* at 154–55. The defendant bears the burden of presenting a compelling case that the presence of some consideration would render jurisdiction unreasonable. *Dodd v. Savino*, 426 S.W.3d 275, 287 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Ren does not present a compelling case that the trial court's exercise of jurisdiction in this case would be unreasonable. He argues that he would have to travel from China, it would be inconvenient for him to travel to Texas to litigate the case, and he would have to obtain a visa after his current visa expires. He offers no evidence as to when his current visa expires or the process involved in obtaining a new visa. He also argues that his past trips to Texas were in a representative capacity, but he has not offered any explanation for how the exercise of jurisdiction in Texas would impose an *unreasonable* burden on him, particularly when he has had the ability to travel to Texas numerous times in the past. On the other hand, Texas has an obvious interest in providing a forum for resolving disputes in which the defendant allegedly committed a tort in whole or in part in Texas, the plaintiff is a Texas company, and the subject oil and gas project is in Texas. *See ERC Midstream LLC v. Am. Midstream Partners, LP*, No. 14-15-00189-CV, 2016 WL 3134337, at *7 (Tex. App.—Houston [14th Dist.] June 2, 2016, no. pet. h.). Additionally, because the trial court already is familiar with this case and the claims against the other defendants are being tried in Texas, it promotes judicial economy to litigate the claims against Ren in Texas. *See id.* Finally, Texas also has a significant interest in resolving claims for torts committed

in Texas against a Texas entity. *See id.* We conclude that haling Ren into court in Texas does not offend traditional notions of fair play and substantial justice under these circumstances.

### *Conclusion*

On balance, we conclude that the trial court's exercise of jurisdiction comports with the constitutional requirements of due process. Accordingly, the trial court did not err in denying Ren's special appearance. We affirm the trial court's order denying Ren's special appearance.


/s/    Martha Hill Jamison
        Justice


Panel consists of Justices Boyce, Christopher, and Jamison.